1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

JOY L. SWIDWA and
BRIAN F. ZALEWSKI,
On Behalf of Themselves
and All Others Similarly Situated,

                                        Hon.
       Plaintiff,                           Case No.
                                          PROPOSED CLASS ACTION

v.

CAVALRY SPV I, LLC,
CAVALRY PORTFOLIO SERVICES, LLC
and WEBER & OLCESE, P.L.C.

       Defendants.

---

### COMPLAINT AND JURY DEMAND

"

      NOW COMES Plaintiffs, **JOY L. SWIDWA ("Swidwa" or "Plainitff")** and **BRIAN F.**

**ZALEWSKI** ( "Plaintiff" or "Zalewski") by and through co-counsel, The Law Offices of Brian

Parker, PC and the attorney, The Law Offices of Nicholas A. Reyna and bring this action against

the above listed Defendants, **CAVALRY SPV I, LLC ("Cavalry" or "Defendants"),**

**CAVALRY PORTFOLIO SERVICES, LLC ("CPS" or "Defendants") and WEBER &**

**OLCESE, P.L.C. ("Weber" or "Defendants")** on the grounds set forth herein:

    **I.**   **PRELIMINARY STATEMENT OUTLINING DEFENDANTS' FALSE**
          **OWNERSHIP AFFIDAVITS LACKING PERSONAL KNOWLEDGE AND**
          **PERJURY CONSEQUENCES COLLECTION PLAN AND SCHEME**

1.

2

Plaintiff brings this CLASS ACTION for damages and injunctive relief based upon the Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and The Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq.

2.

In Michigan, an Affidavit served with a lawsuit is prima facie evidence of indebtedness:

**600.2145 Open account or account stated; proof, counterclaim.**

Sec. 2145.

In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same.

3.

As part of a STATEWIDE scheme in all 83 Counties of the State of Michigan and as shown in the template State Court lawsuits at **Exhibit 1 (Swidwa) and Exhibit 2 (Zalewski) and examples at Exhibit 5**, Cavalry and CPS are filing collection actions against Michigan residents with "Affidavits of Claim" created before the lawsuit is filed with the State Court where the ***Affiant***:

- Has no such personal knowledge of the information she swears she is aware of; and

- Professes knowledge of the computerized record keeping and routine course of business procedures of creditors like CITI BANK, NA. that she does not possess; and

- Is signing Affidavits not written by the Affiant even though the Affiant swears "I

am authorized to make this affidavit for Plaintiff" and "I have access to and have reviewed the applicable records of CPS and Plaintiff as they relate to the Account, and I make this Affidavit based on information from that review" when in reality and based upon the incorrect and inaccurate information in the Affidavit and the complaint it is attached to, the Affidavit was not written by the Affiant as she swears under oath; and

- Is swearing that amounts are due on the debts without a written or factual basis to make this statement under oath; and

- States that the records have been reviewed while the actual Credit Card Agreement of the sued debtor she claims to have access to and attached to the complaint does not exist with the complaint; and

- States that the account was purchased by Cavalry SPV I, LLC while there is no account assignment information attached to the Affidavit or Lawsuit showing that the SPECIFIC debt of the State Lawsuit Defendant was assigned or transferred in the sale of the portfolio of debts attached to the complaint; and

- There is no proof or necessary evidence in the Affidavit or attached to the Affidavit that shows the SPECIFIC Account was sold to Cavalry SPV I, LLC; and

- The Defendant Affiants refers to the State Action debtors as the Defendants before a lawsuit is filed and before the Affidavit is attached to the lawsuit that is filed with the lawsuit; and

- The Affidavit of Claim for Class Rep Swidwa is signed by a Dawn M. Fanning with a signature:

4

Subscribed and sworn to before me on 09/26/2016

Notary Public, State of New York

Dawn M Fanning
Notary Public - State of New York
No. 01FA6091579
Qualified in Westchester County
Commission Expires April 28, 2019

Please see **Exhibit 1**.

- The Affidavit of Claim for Class Rep Zalewski is signed by a Dawn M. Fanning

  with a signature:

5

Subscribed and sworn to before me on 05/16/2017

Notary Public, State of New York

Dawn M Fanning
Notary Public - State of New York
No. 01FA6091579
Qualified in Westchester County
Commission Expires April 28, 2019

    **Please see Exhibit 2**.

While the signature of Dawn M. Fanning (Ryder as of 02/18/15) with the State of New

York Application for Notary Public is completely different:

**Applicant Signature X** ___

Sworn to before me on this ___ day of ___

(County Clerk or Notary Public)

    **Please see Exhibit 1 and 2 and 3 (comparison)**.
4.

    Defendants Cavalry and CPS are engaged in the STATEWIDE practice of submitting

false or deceptive affidavits to state and local courts through Defendant law firms like Defendant

Weber & Olcese in order to fraudulently obtain of thousands of default judgments against

6

consumers for phantom debts or debts they do not have standing to pursue. Indeed most, if not

all, of the judgments Cavalry obtains are default judgments, as very few consumer-defendants in

debt-collection cases take steps to defend themselves.1

5.

A State court's power to issue a final judgment, such as a default judgment, may only be

invoked upon a foundation of admissible evidence. In most consumer debt-collection cases, the

underlying documentation concerning a purported debt has been generated by the credit- issuer's

computer system, and is therefore hearsay under state law throughout the nation. State and local

courts have allowed such documentation into evidence under the limited business records

exception to the hearsay rule, but only so long as an affiant with personal knowledge of the credit-

issuer's records has verified the specific account-level records at issue and attested to their

veracity.

6.

---

1 https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf
See, e.g., Abrams, Tr. V at 18 (well over 60%); Buckles, Tr. I at 24 (85%); Domestic Policy Subcommittee Minority Staff Report of the House Oversight and Government Reform Committee (Domestic Policy Minority Staff) Comment, 3-4 (80% in New York City and Massachusetts, citing Urban Justice Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, 1 (Oct. 2007), available at www.urbanjustice.org/cdp); Evans, Tr. V at 19 (70-80%); Fisher, Tr. V at 193 (70%); Groves, Tr. V at 22-3 (80-90%); Lipman, Tr. I at 21-2 (85-90%); MFY Legal Services (MFY) Comment at 1-2 (90% of New York City debtors fail to answer in suits filed by seven largest debt collection law firms, citing MFY's 2008 report, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York, available at http://www.mfy.org/Justice_Disserved.pdf); Moiseev, Tr. I at 21 (85-90%); Moore, Tr. IV at 18 (80% based on California Creditors' Bar Association informal survey); Neighborhood Economic Development Advocacy Project (NEDAP) Comment at 2 (75% default rate in New York City and 90% rate of failure to answer collection suit); Redmond, Tr. V at 22 (percentage is "certainly very high"); Surh, Tr. IV at 55 (95%); The Legal Aid Society, Neighborhood Economic Development Advocacy Project, MFY Legal Services, and Urban Justice Center – Community Development Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), 8, available at http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf (hereinafter Debt Deception) (finding among 336 collection cases brought by the 26 most litigious debt buyers in New York City that 81% of cases initially resulted in default judgments for the debt buyers); but see also Moore, Tr. IV at 151 (95% of cases that go to judgment are by default).

7

Defendant Calvary and CPS are aware that significant inaccuracies may exist in the sale files of debts it purchases that are bought in large portfolios for pennies on the dollar while suing to collection the full amount of the debt plus attorney fees, interest and costs.  2

7.

Without sufficient account-level documentation—or access to anyone with personal knowledge of a consumer's account—**Cavalry and CPS know they cannot make out a prima facie case demonstrating the existence of any of its consumer debts to have standing or at any time in the judicial collection process through trial**.

8.

Engaging in a pattern and practice of abusing the judicial system is an essential component of Cavalry and CPS's business model: Cavalry could not collect on its consumer debts any other way but through the hearsay Affidavits and false proof of debt and missing debt assignments to support their goal of obtaining a default judgment through their *Attorney Network* of attorneys like Defendant Weber & Olcese on substandard pleadings that lack standing and sufficient proof to go to trial.

9.

The Calvary/CPS/Weber & Olcese Collection Lawsuit lacks any proof or contractual basis to give Plaintiff Cavalry standing or find a State Lawsuit Defendant liable for a debt Cavalry never intends to prove it owns or is able to show paperwork that the debt is owed by the consumer in the collection lawsuit in state court. **See Exhibit 1 and Exhibit 2 and Exhibit 5**.

---

2 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Consumer Financial Protection Bureau, The Consumer Credit Card Market (Dec. 2015); Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (Jan. 2013).

8

10.

The actions of Cavalry and CPS are part of a state-wide scheme designed to eliminate the "Burden" in the Burden of Proof and deceive Michigan residents into paying a debt or being defaulted in State courts where Cavalry lacks ownership and/or proof of ownership to sue on a debt while eliminating the consumer's legal defenses with false affidavits that lack personal knowledge and perjury protections to create material and false representations to support computer template lawsuits in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (9), § 1692f, § 1692d, MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).3

9.

Plaintiffs have suffered damages in that they must now find attorneys at great time and expense to defend against a bogus lawsuit and damage to their credit history and reputation by Defendants Cavalry and CPS with collection attempts through bogus lawsuits that lack standing and proof to hold them liable and Plaintiffs are entitled to a recovery against the Defendants under the FDCPA and RCPA. **Please see Plaintiffs' Affidavits at Exhibit 4**.

**II. PARTIES**

10.

Defendant Cavalry SPV I, LLC is a foreign corporation located in the State of New York and a

---

3 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Mary Spector, "Debts, Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts," 6 Va. L. & Bus. Rev. 257, 288 (2011) (77% default rate in Dallas County); Claudia Wilner and Nasoan Sheftel-Gomes, Neighborhood Economic Development Advocacy Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Low Income New Yorkers (2010) (81% default rates in New York City); Federal Trade Commission, Repairing a Broken System 7 (July 2010) ("panelists from throughout the country estimated that sixty percent to ninety-five percent of consumer debt collection lawsuits result in defaults, with most panelists indicating that the rate in their jurisdictions was close to ninety percent") and 7 n.18 (collecting studies on default rates)

9

debt collector that purchases and collects large portfolios of defaulted consumer receivables under 15

U.S.C. 1692a (6) and whose principal business purpose is the collection of defaulted debts.

Defendant Cavalry collects and services the debts through its servicing arm, Cavalry Portfolio

Services, LLC (CPS) and local attorneys by filing collection lawsuits supported by false and hearsay

Affidavits throughout the State of Michigan. **Please see Exhibit 1 and Exhibit 2 and Exhibit 5**

**which is an example of the template lawsuits and Affidavits filed as a collection attempts**.

Cavalry has a resident agent address in Wayne County, State of Michigan.

11.

Defendant CPS and servicer for Defendant Cavalry and is a Foreign Corporation and

debt collectors of defaulted debts under 15 U.S.C. 1692a (6) and who "regularly collects or

attempts to collect ... debts owed or due ... another" and who will sign off on collection

attempts through lawsuits that use false Affidavits signed by Affiants who have no personal

knowledge of the information they sign off on, the notary may be a "robo-notary" and

without the Affiant swearing to perjury consequences to collect debts throughout the 83

counties in the State of Michigan. **Please see Exhibit 1 and Exhibit 2 and Exhibit 3**

**(comparison)**.   CPS has a resident agent address in Wayne County, State of Michigan.

12.

Defendant Weber & Olcese, P.L.C. is a Michigan debt collector and law firm located in

the City of Troy, County of Oakland, State of Michigan that files lawsuits for Defendant Cavalry

throughout the 83 counties in the State of Michigan based on the Notarized Affidavits of Cavalry

and CPS that are "Robo-Notarized" to meet MCLA 600.2145 prima facie evidence of such

indebtedness with these Affidavits to eliminate the "Burden" in a Plaintiff's Burden of Proof.

**Please see Exhibit 1 and 2 and also Exhibit 3 which is Dawn M Fannings' Application for**

10

**Notary Public in Westchester County, State of New York**.

13.

Plaintiff Joy L. Swidwa is located in the City of Grand Rapids, Kent County, State of Michigan and considered a Consumer under the FDCPA and RCPA.

14.

Plaintiff Brian F. Zalewski is a resident of Webberville, Ingham County, State of Michigan and considered a Consumer under the FDCPA and RCPA

**III. JURISDICTION AND VENUE**

15.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

16.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be

11

addressed separately").

17.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

## IV. STATUTORY STRUCTURE

### FAIR DEBT COLLECTION CAVALRYCTICES ACT (FDCPA)

18.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

19.

Plaintiffs are a consumer. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

20.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

21.

Under the FDCPA, a "debt collector" is any person like Cavalry SPV I, LLC who uses

12

any instrumentality of interstate commerce or the mails in their collection business whose principal purpose for which is the collection of any debts, or like CPS who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another like Cavalry SPV I, LLC. 15 U.S.C. § 1692a (6).

21.

Defendants CPS and Weber & Olcese regularly attempt to collect consumer defaulted debts alleged to be due another and are debt collectors as provided in 15 U.S.C. 1692a (6).

22.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

23.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006).

24.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of

13

false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

25.

Section 1692e further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(**2**)The false representation of—
(**A**) the character, amount, or legal status of any debt; or
(**B**) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(**5**) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(**10**) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(**9**) The use of a written communication falsely claiming authorization or approval of a court or State.

## **REGULATION OF MICHIGAN COLLECTION CAVALRYCTICES ACT (RCPA)**

26.

The Regulation of Michigan Collection Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

27.

14

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

28.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

29.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter &*

15

*Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp.

2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co., LLC*, 886 F. Supp.

2d 591 - Dist. Court, ED Michigan 2012.

30.

"Communicate" means the conveying of information regarding a debt directly or

indirectly to a person through any medium.

31.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a

debt. "Creditor" or "principal" means a person who offers or extends credit creating a debt or a

person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does

not include a person who receives an assignment or transfer or a debt solely for the purpose of

facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or

transferor of the debt shall continue to be considered the creditor or the principal for purposes of

this act.

32.

"Person" means an individual, sole proprietorship, partnership, association, or

corporation. Defendants are regulated persons under § 445.251(g)(xi). Defendants are violating

the following RCPA subsections:

**445.252 Prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the
stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit
bureau and it is disclosed that it is the collection department of the credit bureau; and

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

16

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt; and

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

33.

The Plaintiff, seeks Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court pursuant to the FDCPA and the RCPA and all other common law or statutory regimes. **Please see Exhibit 4**.

34.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

17

## V. FACTUAL ALLEGATIONS

35.

In **Exhibit 1 and Exhibit 2**, Defendant Cavalry SPV I, LLC (Cavalry) is suing Plaintiffs while alleging they had a credit card debt with Citibank, N.A. that was eventually charged off by Citibank, N.A. and sold to Defendant Cavalry as part of a large portfolio sale and assignment of defaulted debts.

36.

Defendant Cavalry purchases in bulk purportedly delinquent credit card and other accounts with little or any proof of debtor ownership. Prior to purchase, information about the relevant portfolio of alleged debts is transmitted to Cavalry SPV I, LLC in a computerized summary which Defendant Cavalry Portfolio Services, LLC (CPS) then collects and services through the Cavalry Attorney Network attorney in the State of Michigan. On behalf of Cavalry, CPS then provides Michigan attorneys like Weber & Olcese, PLC with Affidavits and "proof" to file lawsuits to collect on the defaulted debt.

37.

At the time Cavalry completes a purchase of a portfolio of consumer debts, Cavalry is on notice that the electronic spreadsheet submitted to Cavalry is replete with inaccuracies, Cavalry purchases the debt "as is" and without any warranty of accuracy from Citibank to Calvary and the Defendant lacks the necessary proof that buying debt for pennies on the dollar would encompass.

38.

Defendant Cavalry buys the debt through purchase agreements referenced in **Exhibit 1 and Exhibit 2** ( sometimes called "Affidavit of Sale of Account By Original Creditor" or "Bill

18

of Sale and Assignment") through the parties' purchase agreement that disavows responsibility for the accuracy of the data contained in the spreadsheet accompanying the portfolio purchase along with no assignment of the SPECIFIC debts of Plaintiff representatives or the Class Members being assigned to Cavalry prior to being assigned to CPS and the Cavalry Attorney Network.

39.

No representations are made by the seller of the debts (Citibank) to Cavalry regarding the accuracy of the information transferred in any sale. Defendant Cavalry, CPS and Weber & Olcese purposely leave the Portfolio purchase agreement off the Exhibits to the CPS Complaints (**Exhibit 1 and Exhibit 2 and Exhibit 5**) to avoid the accuracy issues. The actual purchase agreements are not included in the lawsuits to hide the fact that Cavalry buys the debts "as is" and with no paperwork proving the accuracy of the purchased debts or ownership.

40.

The minimal information obtained by Defendant Cavalry through the purchase of a portfolio of consumer debts is not sufficient to establish the validity of the debt, the State Defendant's owing the debt to Cavalry, or the calculation of the balance claimed, and it certainly is not sufficient to support a Michigan court finding that the consumer owes the debt. Defendants Cavalry and CPS are aware of this deficiency but instruct their attorney clients like Weber & Olcese to file the lawsuit anyway with the only intent to obtain a default and avoid standing or the burden of proof. **Please See Exhibit 1 and Exhibit 2 and Exhibit 3 (comparison)**.

41.

While fully aware that it cannot demonstrate the evidentiary existence of any of the debts

19

that it has purchased or the exact amount possibly owed thereupon, Cavalry and CPS has their network of Michigan attorneys file "computer template" collection lawsuits with the use of false Affidavits that lack the personal knowledge and any consequences of perjury by the Affiant/Custodian that signs them. Further, the Affidavits misrepresent that the Affiant has seen or reviewed proof that Cavalry are the are owners of the debt of the SPECIFIC STATE DEBTOR like Ms. Ramirez and various other information that fails to provide written support or backing to the Affiant's swearing under oath. **Please see Exhibit 1, Exhibit 2 and Exhibit 3 (comparison)**.

42.

As the Affidavit and written paperwork attached to the lawsuit at **Exhibit 1 and Exhibit 2** reveals, Cavalry, CPS and Weber & Olcese's sole intention is to obtain default judgments without ever having had admissible prima facie evidence to substantiate its claims. In fact, Ms. Swidwa's lawsuit was placed in default after she was told by Weber & Olcese to not Answer the lawsuit, make payment arrangements and not worry about a default. **Please see Exhibit 4**.

43.

Upon information and belief, at least 45% to 90% of the lawsuits that Cavalry files against consumers result in default judgments. This is because the vast majority of the legal actions that Defendant files go uncontested, allowing Defendants to collect on alleged debts that either are invalid or have an improperly inflated face value.

44.

Defendant Cavalry's and CPS Affiants and Custodian of Records have not reviewed account-level documentation (from the Creditor Citibank) as nothing in the Affidavit attached to the Weber & Olcese state lawsuits at **Exhibit 1 and Exhibit 2** state anything about the

20

information provided or the authenticity of documents *from Citibank* or attach anything corroborating their representations when the Affiants sign off on "fill in the blank" Affidavit of Claims with the typed in hearsay and Robo-Notary attached to the computer-generated STATE complaint here against the Class Representative Plaintiffs at **Exhibit 1 and Exhibit 2 and Exhibit 5 (examples)**.

45.

Under MCL 600.2145 and as part of Defendants' scheme to use materially false affidavits and no assignment of debt paperwork or proof to obtain judgements throughout the State of Michigan, when Cavalry files the computer template lawsuit with the ***false Affidavit with a robo-notary***, the Affidavit is deemed to be prima facie evidence of such indebtedness and then the burden of proof falls then on the debtor to prove she does not owe the debt the ***false affidavit*** wrongfully states the Michigan debtor does.

46.

The hearsay representations made in the Cavalry/CPS Affidavits are material because they are likely to affect the unsophisticated consumers choice or conduct regarding how to respond to a lawsuit and are likely to mislead Ms. Ramirez specifically when acting reasonably under the circumstances. **Please see Exhibit 1 and 2 and Exhibit 5**.

47.

Cavalry takes advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the debt collectors and servicers like CPS who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the validity of each and

21

every default judgment application.

48.

There are no attached Credit Card Agreements commensurate with the actual specific

debts of the state defendants being sued in the template collection lawsuits.

49.

Defendants create the false Affidavit of Claim to attach to the collection lawsuit to make

up for the lack of proper proof and lack of credit card agreements while creating the false

impression that Cavalry and their attorneys have a right to collect and sue the State Defendants

and receive a Default Judgment.

50.

Defendants file collection lawsuits against State Defendants using the computer

template pleadings that are false and hearsay as they lack any non-hearsay or independent proof

that this amount is owed to Cavalry and CPS. **Please see Exhibit 1 and Exhibit 2 and Exhibit**

**5**.

51.

Defendants are filing these collection lawsuits in courts within the State of Michigan

without a certified or other properly authenticated copy of each bill of sale or other document

evidencing the transfer of ownership of the Specific Debt at the time of Charge-off to each

successive owner and with no evidence or specific reference to the particular Debt being

collected upon and the proof attached to collect on that debt. **Please see Exhibit 1 and Exhibit 2**

**and Exhibit 5**.

52.

22

The Cavalry collection lawsuits were computer generated by rote and created by non-attorney employees of CPS for Cavalry, without any meaningful or substantive review of the debtor file by any Cavalry or CPS Attorney that signs off on the complaints." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

53.

Defendants' scheme and plan to both, eliminate the rights of consumers' ability to defend themselves and convince a State Court that a Default and Default Judgement is warranted on the merits of a false complaint and false and hearsay affidavit, is not complete or possible without the attorneys at Weber & Olcese as the attorneys for Cavalry signing off on the whole thing. **Please see the lawsuits as filed against the Plaintiffs attached as an example of the use of this format and dependence on the Affidavits at Exhibit 1 and Exhibit 2 and Exhibit 5**.

54.

Time is money and a Default Judgment is the goal of Defendants. The vast majority of the Debt collection lawsuits CAVALRY files go unanswered by Consumers and result in default judgments given the ready-made but false Affidavit presented to the defaulting Court. The material misrepresentation in the Affidavits help Defendants eliminate the "Burden" in their Burden of Proof in State Court by presenting false affidavits under MCLA 600.2145 requiring class members an increased burden of defending themselves in court against a collector using false paperwork and attorney proof. **Please see Exhibit 4**.

55.

In violation of the FDCPA and RCPA, the material misrepresentations of the Defendants go to the heart of the consumer's due process right to defend themselves against a lawsuit. The

23

actions to falsify Affidavit verifications, to have Attorneys verify pleadings they have not read and/or that don't follow the Michigan Court Rules on pleadings is purposeful misrepresentation on the part of Defendants to eliminate the legal rights and defenses of debtors and to prop up false Default Judgments in Michigan Courts.

## VI. CLASS ACTION ALLEGATIONS

56.

Plaintiff restates the above pleadings.

57.

Plaintiff brings this lawsuit as a class action. Plaintiff tentatively defines two classes including all persons in the State of Michigan who, during the one year (FDCPA), six years (RCPA) and six years (MOC) prior to the filing of this complaint were the victims of "Cavalry Affidavits" and "Cavalry/CPS/Weber Lawsuits" created by Defendants in violation of Federal and State law.

58.

The FDCPA Class consists of all persons with a Michigan address that were sued by the Defendants' collection lawsuits in violation of § 1692e, § 1692e (10), § 1692e (5), § 1692e (2)(A), § 1692e (9), § 1692f and § 1692d.

59.

The RCPA Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

60.

There are questions of law and fact common to each class, which common issues

24

predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA, MOC and RCPA.

61.

There are no individual questions here. All Michigan class members receive the same or similar computer template "CPS Affidavits" and "Cavalry/CPS/Weber Lawsuits" with false robo notary signings and no debt assignments that are filed in violation of the FDCPA and RCPA.

62.

Plaintiffs will fairly and adequately protect the interests of the class. Plaintiff are committed to vigorously litigating this matter.   They are greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, they have retained counsel experienced in litigating consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests which might cause them to not vigorously pursue this claim.

63.

Plaintiffs' claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 1, Exhibit 2 and Exhibit 5**.

64.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are

25

$1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

65.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

    (a)    The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

    (b)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

66.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

    a.  Whether defendants had a practice of using "CPS Affidavits" and "Cavalry/CPS/Weber Lawsuits" with robo signed notaries and false Affiant verifications and no debt assignment proof against Michigan residents in violation of the FDCPA without meaningful review.

    b.  Whether doing so violated the FDCPA and RCPA and MOC.

67.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

26

68.

Plaintiff requests certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## **VII. CLAIMS FOR RELIEF**

### **Count 1-Fair Debt Collection Practices Act**

69.

Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.   Defendants violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt using the collection methods at **Exhibit 1 and Exhibit 2** above that are material to due process and the response of the consumer who is being sued under MCL 600.2145 with false documentation and verifications that but for the material misrepresentations, the Consumer would have a less burdensome or better defense to the lawsuit including the Affirmative Defense of "lack of ownership" "no assignment or sale of the debt" and other defenses the consumer believes she does not have because of the false documents used by Defendants; and

b.   Defendants collected on the debt and violated 15 U.S.C. 1692f by designing and furnishing the "Affidavits" at **Exhibit 1 and Exhibit 2** knowing that such a format would be used to create the false belief in Michigan resident debtors and Michigan Courts that a lawsuit was supported by a legally notarized Affidavit when in fact, such is not the case as stated above; and

27

c. Defendants Attorneys seek to collect on the debt and violated 15 U.S.C. 1692f (1) with no proof, chain of title or transfer, authorization or card holder agreement to collect on the lawsuits and debts at **Exhibit 1 and Exhibit 2**; and

d. Defendants collected on the debt and violated 15 U.S.C. 1692e (5) by designing and furnishing false and hearsay "Affidavits" at **Exhibit 1 and Exhibit 2** to falsely accuse, threaten and sue Michigan resident debtors without the necessary proof and in violation of the FDCPA and Michigan Court Rules; and

e. The Defendants violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection lawsuit and judgment is falsely supported by the "CAVALRY/CPS Affidavit" as stated above; and

f. The Defendants violated 15 U.S.C. §1692e(9) by creating and verifying false Affidavits to have Michigan Residents and Michigan Courts believe that the Affidavits are legal process or certified by a Court by naming Plaintiffs and Defendants that did not exist at the time the parties were named along with false information in a lawsuit and affidavit to create the false belief that the documents were properly notarized and/or authorized by attorneys following the Michigan Court Rules to fool Michigan Residents and Michigan Courts into believing Defendants were authorized file the lawsuits and that they owned the debt that was the basis of the lawsuits and Affidavits as stated above at **Exhibits 1 and Exhibit 2**; and

g. Defendants collected on the debt and violated 15 U.S.C. 1692d by designing and furnishing false "Cavalry Affidavits" at **Exhibit 1 and Exhibit 2** and lawsuits (collection attempts) to abuse and harass Michigan Consumers into paying a debt to Defendants based on that false proof in violation of the Michigan Court Rules in pleading and

28

verification; and

h.      Defendant Attorneys violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (3) by approving and

verifying false lawsuits and false affidavits created by CPS where there is no meaningful

involvement by the attorney other than signing something the attorney has not read or had

a meaningful involvement of the specific file of Michigan resident debtors as stated

above.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.      Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B);

and

b.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and

c.      Actual Damages in the form of the required elevated responses, stress and out of pocket

costs of having to respond to a false debt collection lawsuit under MCL 600.2145 (**Exhibit**

**2**); and

d.      Such further relief as the court deems just and proper.

**Count 2- RCPA CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE**

**RELIEF**

70.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are

not necessarily limited to, the following:

a.      Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibit 1 and Exhibit 2** as mentioned above;

b.      Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not

29

revealing the purpose of a communication when it is made in connection with collecting a

debt at (**Exhibit 1 and Exhibit 2**); and

c.     Defendants violated MCLA 445.252(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)     The legal status of a legal action being taken or threatened.

(ii)     The legal rights of the creditor or debtor at (**Exhibit 1 and Exhibit 2**);

d.     Defendants violated MCLA 445.252(q) by failing to implement a procedure designed to

prevent a violation by an employee by continuing to seek unauthorized advances not

authorized under the mortgage contract of Michigan Consumers for six years through

forms at **Exhibit 1 and Exhibit 2**; and

e.     Defendants have violated MCLA 445.252(b) by creating documents designed to simulate

the appearance of judicial process or appearance at **Exhibit 1 and Exhibit 2**; and

f.     Defendants have violated MCLA 445.252(a) by communicating with debtors in a

deceptive manner at **Exhibit 1 and Exhibit 2**.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.     Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful

violation, pursuant to M.C.L. 445.257(2);

b.     Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but

not limited to, a declaration that defendant's debt collection practices violated the RCPA,

as well as an injunction, enjoining Defendant from using **Exhibit 1 and Exhibit 2** which

violates Michigan law; and

c.     Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial

sanction.

30

d.      Actual Damages in the form of the required elevated responses, stress and out of pocket

costs of having to respond to a false debt collection lawsuit under MCL 600.2145 (**Exhibit**

**4**);

## VIII. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

                                            Respectfully submitted,

July 29, 2017                               s/Brian P. Parker
                                            BRIAN P. PARKER (P48617)
                                            Co-Counsel Attorney for Plaintiff
                                            4301 Orchard Lake Road, STE 180-208
                                            West Bloomfield, MI 48323
                                            (248) 342-9583
                                            brianparker@collectionstopper.com

                                            /s/ Nicholas A. Reyna
                                            NICHOLAS A. REYNA (68328)
                                            Attorney for Plaintiffs
                                            528 Bridge St. NW Ste. 1a
                                            Grand Rapids, MI 49504
                                            (616) 235-4444
                                            Nickreyna7@hotmail.com